639 A.2d 848

**M & M/MARS, INCORPORATED, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1993.

Decided March 9, 1994.

Francis Mazzola, for petitioner.

Bart J. DeLuca, Jr., for respondent.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

M & M/Mars, Incorporated (Taxpayer) seeks review of a decision of the Board of Finance and Revenue sustaining the decision of the Board of Appeals in an assessment of use tax on packaging equipment and on payments made to a food service management company for the operation of a cafeteria for Taxpayer's employees.

The procedural history of this appeal is as follows. The Pennsylvania Department of Revenue (Department) conducted a sales and use tax[1] audit of Taxpayer for the period of January 1, 1984 through March 31, 1987. That audit produced a use tax assessment against Taxpayer in the amount of

---

1. Sales tax is assessed on the purchaser at the time of purchase. Use tax is assessed on the vendor or purchaser if the purchaser did not pay sales tax at the time of purchase.

$117,807.66, plus interest and penalties. Taxpayer contested the use tax assessment by filing a Petition for Reassessment with the Board of Appeals. After a hearing, the Board of Appeals issued an order reducing the use tax assessment by $610.16 and abating the penalties. This decision was timely appealed by Taxpayer to the Board of Finance and Review which issued a decision sustaining the order of the Board of Appeals. The appeal is presently before this court for consideration of three issues.

First, we must determine whether the amount paid by Taxpayer to the food management company, Servomation, to operate a cafeteria at Taxpayer's place of business, is subject to a sales or use tax in this Commonwealth. Second, we must determine whether machinery that is used by Taxpayer during a manufacturing operation to place manufactured product into packaging allegedly passing to the ultimate consumers is excluded from Pennsylvania sales and use tax. Finally, we are asked to consider whether the Department engaged in unequal enforcement of the tax statute by assessment of a use tax on Taxpayer with regard to the cafeteria and machinery tax.

On December 21, 1992, the parties entered into and filed a partial stipulation of facts. By Order dated April 2, 1993, Taxpayer's motion to treat the partial stipulation of facts as the complete stipulation of facts was granted. A stipulation of facts entered into by the parties binds both the Commonwealth and the taxpayer. *Guardian Life Insurance Company of America v. Commonwealth,* 148 Pa.Commonwealth Ct. 430, 611 A.2d 797 (1992); *Doyle Equipment Company v. Commonwealth,* 117 Pa.Commonwealth Ct. 38, 542 A.2d 644 (1988); *Commonwealth v. Beck Electric Construction Company,* 32 Pa.Commonwealth Ct. 229, 379 A.2d 626 (1977), *aff'd in part, rev'd in part,* 485 Pa. 604, 403 A.2d 553 (1979). The relevant facts, as set forth in that stipulation of the parties, are as follows.

Taxpayer is a Pennsylvania corporation engaged in the business of manufacturing confectionery and snack food prod-

ucts. Taxpayer manufactures Milky Way bars, Three Musketeers, and Kudos Granola snacks. Taxpayer sells all of the products it manufactures to Mars, of which Taxpayer is a wholly owned subsidiary, and does not sell any of its products at retail. Stipulations of fact 1–5, 87.

With regard to the cafeteria, Taxpayer contracts with Servomation to operate and manage the cafeteria during each work shift. Servomation, by contractual agreement, provides all services to manage the cafeteria including purchasing, preparing and selling the food. Stipulation of fact 23. Employees of Servomation prepare the food, place or serve the food in the cafeteria line, operate the cash register to receive payment for the food, including sales tax, from cafeteria patrons, clean the food service area and equipment, clean the eating areas and service condiment areas, and handle accounting for cash receipts for food sales including filing sales and use tax returns for sales tax collected on food sold to cafeteria patrons. Stipulation of fact 25.

Servomation is an independent contractor. Neither the contractor nor Taxpayer has authorized the management company to act as Taxpayer's agent with respect to operation of the cafeteria. Stipulations of fact 28–29. All food products purchased for the cafeteria and prepared or served in the cafeteria are the property of Servomation until sold to cafeteria patrons. Taxpayer does not own or have custody or possession of any cafeteria food products at any time. Stipulation of fact 33. Any excess food from the cafeteria is disposed of by Servomation. Stipulation of fact 49.

The amount paid by cafeteria patrons is the full consideration for the transfer of each separate food item when purchased by the cafeteria patrons. Stipulation of fact 47. Cafeteria patrons pay sales tax on the food purchased at the cafeteria. Stipulations of fact 25, 31. Servomation collects and remits sales tax on the price charged to cafeteria patrons on its sale of food in the cafeteria. Stipulation of fact 56.

Servomation receives an operating fee as payment for cafeteria management services pursuant to a contract with Tax-

payer. The operating fee is computed at a fixed percentage of all of the operating expenses of Servomation. Under the contract, Taxpayer is required to reimburse Servomation for all direct and indirect cafeteria operating expenses. Stipulations of fact 36–37. Taxpayer receives monthly invoices from Servomation. On the monthly invoice, Servomation lists all of its cafeteria operating expenses, adds its operating fee, and deducts amounts paid by the cafeteria patrons at the cash register. The balance (or fee), which consists of the operating fee and operating expense reimbursement payment is billed to the Taxpayer. Stipulation of fact 38. Servomation receives payments from employees/patrons as they purchase food and a fee payment once a month from Taxpayer. Stipulation of fact 43. If gross receipts from food sales to patrons equals or exceeds the operating fee and operating expenses of the cafeteria, Taxpayer has no obligation to pay any amount to Servomation. Stipulation of fact 64. However, Taxpayer is still required to pay the fee to Servomation even if no food is sold to cafeteria patrons during a particular month. Stipulation of fact 22. Taxpayer is not reimbursed by cafeteria patrons for any portion of the fee. Stipulation of fact 62.

The fee is the only amount Taxpayer pays to Servomation and that fee is paid to operate the cafeteria. The fee does not include any purchases of unprepared food or related supplies by the Taxpayer. Stipulations of fact 38–39. The Department assessed tax on the amount of the fee. Stipulation of fact 40. Taxpayer has been audited by the Department every year since 1974 and has never been assessed tax on the fee. In audits of those prior years, Department auditors never asserted the fee was taxable. Stipulation of fact 67. Operation of the cafeteria has not materially changed during the years the plant has been in operation. Stipulation of fact 68.

The Department argues that the fee paid by Taxpayer to Servomation is subject to taxation because it represents a contract for the sale and delivery of tangible personal property, food, which constitutes a purchase at retail under Section 201(f) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7201(f). The Department

asserts that purchase price as defined by the Code includes the total value of everything paid in complete performance of a purchase at retail. Pursuant to this assertion, the Department argues Taxpayer must be taxed on the entire amount of its agreement with Servomation.[2] To the contrary, Taxpayer argues the assertion of the Department is incorrect because the fee is not paid to purchase a taxable service[3] and the fee is not paid to purchase food.

Section 202 of the Code imposes tax upon each separate sale or purchase at retail of tangible personal property or services.[4] 72 P.S. § 7202(a), (b). Section 201(f) of the Code defines purchase at retail as the acquisition for a consideration of the ownership, custody or possession of tangible personal property other than for resale by the person acquiring the same when such acquisition is made for the purpose of consumption or use. 72 P.S. § 7201(f). Section 201(g) defines purchase price as the total value of anything paid or delivered, or promised to be paid or delivered, whether it be money or otherwise, in complete performance of a sale at retail or purchase at retail. 72 P.S. § 7201(g). As stipulated to by the parties, the facts do not establish that the fee paid by Taxpayer for operation of the cafeteria constituted payment for the sale of tangible personal property.

Based upon our review, the fee paid by Taxpayer to Servomation for operation and management of the cafeteria for use by employees and guests does not involve the transfer of ownership, custody or possession of the food/tangible personal property as required by the Code. Rather, the amount paid by the cafeteria patrons at the cash register represents

2. The Department concedes that tax is paid by the cafeteria patrons on food purchased at the cafeteria and that it would not be able to assess tax without imposing duplicate taxation, but it argues tax should be assessed only on the difference between the amount paid to Servomation and the cost of the food sold, the "fee" amount.

3. The Department concedes, in stipulation of fact 27, that the cafeteria management services are not taxable services enumerated in the tax sales law of this Commonwealth.

4. Section 202 imposes a tax of six per cent of the purchase price payable to the Commonwealth.

the only purchase price or taxable amount paid by anyone for the transfer of ownership, custody or possession of the personal property, food, at issue here. According to the record, that amount is already being assessed a tax which is paid by cafeteria patrons and collected and remitted to the Department by Servomation. Stipulations of fact 25, 31, 56.

We now turn our consideration to the manufacturing operation of Taxpayer. With regard to the manufacturing activities engaged in by Taxpayer, the stipulated facts reveal that each manufactured candy or granola bar is individually wrapped. Stipulation of fact 79. The snack products are packaged as follows: 36–count cartons; 24–count cartons; 10–count packages; 8–count packages; 6–count packages; 8, 16 and 32 ounce bags; and canisters. Use tax was assessed by the Department on machinery used exclusively in packaging the bars in cartons.[5] Stipulations of fact 14, 111.

The cartons are constructed of lightweight cardboard and are unsuitable as shipping packages for the individual bars. Stipulation of fact 101. Cartons are produced in high-gloss multicolor printing with the same consumer product information as the individual bars including a list of ingredients, freshness date and uniform product code (UPC). The cartons are printed with UPC symbols so that they can be sold by retail establishments that use UPC scanning machinery to record sales. Stipulations of fact 102–103. The cartons are printed with all of the information required by governmental regulatory agencies to be printed on items sold to ultimate consumers. Stipulation of fact 104. The cartons are printed with the same freshness purchase dates as the individual bars in those cartons to advise the ultimate consumers who may purchase the cartons of the age of the product to insure that it is consumed while fresh. Stipulation of fact 105. The cost of designing and producing high-gloss multicolored cartons is significantly higher than producing cartons from lightweight

5. The Department did not assess tax on purchased machinery of Taxpayer used to package bars in the 6, 8, or 10 bar packages. It did assess tax on machinery purchased to package bars in the 24 and 36 bar cartons.

cardboard without the high-gloss multiple colors or consumer product information. Stipulation of fact 108.

All of Taxpayer's products are sold to its parent corporation, Mars, in shipping cases. Stipulations of fact 86, 89. The shipping cases are not printed in high-gloss multicolor or with consumer product information. Taxpayer's product could be sold and shipped in shipping cases without cartons. Stipulations of fact 110, 112. Mars sells the product to its customers in shipping cases. Stipulation of fact 90. Many of Mars' retail customers such as food emporiums (warehouse clubs), food distributors, and grocery stores sell Taxpayer's products in cartons. Stipulations of fact 88, 91, 93. There are 698 food emporiums in this country which sell Taxpayer's products in cartons. Stipulation of fact 97. Many grocery stores, food distributors and large retailers such as K–Mart sell the products in cartons, particularly during Halloween, hunting and camping seasons. Stipulation of fact 100.

Taxpayer argues that packaging machinery used in its manufacturing operation exclusively to package 24 and 36–count candy bars in cartons that pass to ultimate consumers is excluded from tax under the manufacturing exclusion because the machinery is directly used in manufacturing. Taxpayer argues the machinery is utilized exclusively for a purpose that is excluded from the definition of use under Section 201 of the Code and is, thus, not taxable. The Department acknowledges that Section 201 excludes from use tax machinery, equipment and parts and supplies used in manufacturing.

Section 201(c) of the Code defines manufacturing as activities which place personal property in a form, composition or character different from that in which it is acquired. Taxpayer manufactures candy and granola bars at its plant and receives a sales and use tax exclusion for machinery, equipment, parts and supplies directly used in manufacturing. The manufacturing exclusion is limited to:

(1) Every operation commencing with the first production stage and ending with the completion of personal property having the physical qualities (including packaging, if any,

passing to the ultimate consumer) which it has when transferred by the manufacturer to another ...

72 P.S. § 7201(c)(1).

The exclusion ends when the manufacturer treats the product as completed so that it may be transferred to the ultimate consumer or another manufacturer. *Lancaster Laboratories v. Commonwealth,* 134 Pa.Commonwealth Ct. 59, 68, 578 A.2d 988, 993 (1990), *aff'd in part, rev'd in part,* 148 Pa.Commonwealth Ct. 465, 611 A.2d 815 (1992).

The Department argues the manufacturing exclusion does not extend to packaging which does not pass to the ultimate consumer and is not available once the manufactured product acquires the physical qualities which it has when transferred to another. The Department concludes that the packaging passing to the ultimate consumer includes 6, 8, and 10–count packaging and wrapping as well as the individual wrapping which it agrees are exempt from taxation. The Department states that if the last stage in manufacturing is packaging to the ultimate consumer, then packaging which does not pass to the ultimate consumer is taxable. Assuming that the packaging is taxable, the Department asserts that logically, the equipment used to create the packaging not passing to the ultimate consumer is taxable. Thus, the Department concludes the tax assessed on equipment predominantly used to package 24 and 36–count candy and granola bars is valid because Taxpayer cannot demonstrate that the 24 and 36–count packaging passes to the ultimate consumer.

We point out that the manufacturing exclusion must be strictly construed against the Department because it is an exclusion and not a tax exemption. Any reasonable doubt regarding interpretation of the exclusion with respect to Taxpayer's manufacturing operations must be resolved in favor of Taxpayer. *Union Paving Co. v. Commonwealth,* 148 Pa.Commonwealth Ct. 358, 611 A.2d 360 (1992). Additionally, we find no statutory or regulatory basis to support the asserted belief that the manufacturing exclusion is inapplicable because some of the 24 and 36–count cartons may not be purchased by the

ultimate consumers. This is especially so in light of the stipulated facts of record which binds the parties. *Guardian Life; Doyle Equipment.*

■ As illustrated above, the cartons manufactured by Taxpayer of high-gloss, multicolor material, at additional cost to Taxpayer, were designed and produced for consumers. Stipulations of fact 106, 108. Further, the cartons are printed with the requisite consumer information including a list of ingredients, product freshness dates, UPC symbols and other consumer information required by governmental regulatory agencies for sale to consumers. Stipulations of fact 102–105. Taxpayers products are regularly, and sometimes exclusively, marketed and sold by retailers in cartons. Stipulations of fact 93–95, 98, 100. Finally, the Department concedes that the cartons are packaging which passes to the ultimate consumer. Stipulation of fact 107.

This concession by the Department that the cartons are packaging which passes to the ultimate consumer, in conjunction with the other pertinent stipulated facts, establishes that the 24 and 36–count cartons are consumer packaging. It then follows that the machinery used in the manufacturing of this packaging is excluded from being assessed a tax because it is used directly to package the manufactured candy and granola bars into the cartons.[6]

Accordingly, on the basis of the foregoing, the assessment of tax on Taxpayer by the Department for the fee paid to the food service management company for operation of the cafeteria and for machinery used in the manufacturing operation for the packaging of snack food in 24 and 36–count cartons is reversed.[7]

## ORDER

AND NOW, this 9th day of March, 1994, the order of the Board of Finance and Revenue is reversed.

6. See stipulations of fact 111, 113–115.

7. On the basis of our disposition of this matter, the issue of unequal enforcement of the tax statute will not be considered.