2002 ME 176

**FLIK INTERNATIONAL CORP.**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued: Nov. 13, 2002.
Decided: Dec. 20, 2002.

Sarah H. Beard, Esq. (orally), Pierce Atwood, Portland, ME, for plaintiff.

G. Steven Rowe, Attorney General, Thomas A. Knowlton, Asst. Attorney General (orally), Augusta, ME, for defendant.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] The State Tax Assessor appeals from an entry of summary judgment in favor of Flik International Corp. by the Superior Court (Kennebec County, *Marden, J.*). The State Tax Assessor argues that the Superior Court erroneously held, as a matter of law, that contract payments to reimburse Flik for costs associated with operating three MBNA cafeterias did not fall within the statutory definition of "sale price" of the food that Flik sold, and that, therefore, those contract payments were exempt from Maine sales tax. We agree

and vacate the judgment of the Superior Court.

## I. CASE HISTORY

[¶ 2] MBNA America Bank, N.A. (MBNA), and Compass Group USA, Inc., (Compass) entered into a contract (the contract) under which Compass agreed to provide food services at MBNA's facilities in exchange for certain payments. Compass assigned the contract to its wholly owned subsidiary, Flik International Corp. (Flik). Pursuant to the contract, Flik acquired, prepared, served and sold food and drink to MBNA employees at cafeterias at three MBNA facilities in Belfast and Camden.

[¶ 3] MBNA set the prices that Flik charged the patrons at MBNA's cafeterias, and insisted that those prices for sales of food and drink be at or below competitors' prices. Flik would not have agreed to charge the low prices but for MBNA's agreement to reimburse Flik for costs that Flik did not recover from the revenues derived from sales to cafeteria patrons. Flik collected and remitted the sales tax paid on the prices charged to cafeteria patrons.

[¶ 4] In addition to setting the prices, MBNA also required that Flik operate the cafeteria for longer hours and employ more staff than a typical restaurant to ensure that the cafeteria patrons would not have to wait in long lines. Due, in part, to the food prices, staffing levels and longer hours of operation, Flik's costs for operating MBNA's cafeterias exceeded gross revenues from cafeteria sales for the periods at issue in this case.

[¶ 5] To cover the costs exceeding revenues, MBNA paid Flik a subsidy at the end of each month, hereinafter referred to as the "contract payment." The contract payment equaled Flik's monthly costs of acquiring, preparing and selling food in MBNA's cafeterias, plus a guaranteed profit,[1] plus an overhead charge,[2] less the gross proceeds from Flik's sales to cafeteria patrons. MBNA never directly reimbursed Flik for any portion of the stated sale price of any food item sold to cafeteria patrons. For the tax periods at issue in this case, MBNA paid Flik over $1,600,000 in contract payments. Flik did not remit sales tax on the contract payments that MBNA paid to Flik.

[¶ 6] The State Tax Assessor audited Flik's records and assessed $215,342 in sales tax against Flik on the contract payments that Flik received from MBNA from July 1997 through January 2000. On reconsideration, pursuant to 36 M.R.S.A. § 151 (Supp.2002), the State Tax Assessor upheld the tax assessments against Flik. Flik filed a petition for review and de novo determination pursuant to 36 M.R.S.A. § 151.

[¶ 7] Flik and the State Tax Assessor filed cross-motions for summary judgment. After a hearing, the Superior Court granted Flik's motion for summary judgment and denied the State Tax Assessor's motion for summary judgment, reversing the decision of the State Tax Assessor. The State Tax Assessor appealed the decision of the Superior Court.

## II. DISCUSSION

[¶ 8] In a tax appeal pursuant to 36 M.R.S.A. § 151, we review the Superior Court's determinations of law de novo. *J & E Air, Inc. v. State Tax Assessor*, 2001 ME 95, ¶ 6, 773 A.2d 452, 454; *Fairchild*

---

1. The guaranteed profit was the greater of three percent of Flik's monthly cafeteria sales or a minimum dollar amount.

2. The overhead charge was the greater of two percent of Flik's monthly cafeteria sales or a minimum dollar amount.

*Semiconductor Corp. v. State Tax Assessor*, 1999 ME 170, ¶ 7, 740 A.2d 584, 586. We must review the Superior Court's findings of fact for clear error. *See Koch Refining Co. v. State Tax Assessor*, 1999 ME 35, ¶ 8 n. 5, 724 A.2d 1251, 1254.

[¶ 9]  The material facts in this case are not disputed.[3]  The propriety of the court's entry of a summary judgment in favor of Flik, therefore, turns on whether, as a matter of law, the contract payments that MBNA paid to Flik fall within the definition of "sale price" under 36 M.R.S.A. § 1752(14) (1990).

[¶ 10]  The trial court's decision must be evaluated in the context of several important factors.  First, the parties agree that if Flik's costs, overhead and profit were entirely covered by the amounts collected directly from sales, then all of the sales proceeds would be subject to sales tax.  The parties also agree that if employees were not charged for food, and Flik's costs, overhead and profit were entirely covered by the contract payments from MBNA, then all of the contract payments would be subject to sales tax.  Thus, Flik is arguing that the contract payments are not subject to sales tax only because they cover some, but not all, of the cost of the goods sold.

[¶ 11]  Second, the Maine sales tax statute imposes a tax "on the value of all tangible personal property and taxable services sold at retail in this State."  36 M.R.S.A. § 1811 (Supp.2002).  Value is measured by the sale price of the property.  36 M.R.S.A. § 1811.  Sale price is defined as the total amount of a retail sale valued in money, including services that are part of the retail sale. The law defining sale price provides in pertinent part:

"Sale price" means the total amount of a retail sale valued in money, whether received in money or otherwise.

A. "Sale price" includes:

(1)  Services which are part of a retail sale; and

(2)  All receipts, cash, credits and property of any kind or nature and any amount for which credit is allowed by the seller to the purchaser, without any deduction on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest paid, losses or any other expenses.

36 M.R.S.A. § 1752(14).

[¶ 12]  Thus, under Maine law, the service component is part of the sale price of goods that are subject to tax.

■ [¶ 13]  Third, in a case where the facts are not in dispute, the burden is on the taxpayer, at all stages of the proceeding, to establish that the transaction is not taxable.  *See* 36 M.R.S.A. § 151; *see also Apex Custom Lease Corp. v. State Tax Assessor*, 677 A.2d 530, 532 (Me.1996).

■ [¶ 14]  Under Maine sales tax law, sales of services alone are generally not taxed, but services that are part of the retail sale of tangible personal property are taxable.  *Jackson Adver. Corp. v. State Tax Assessor*, 551 A.2d 1365, 1367 (Me. 1988).  ("The tax base is the sale price and includes the cost of labor and services that are a part of the sale.")  As we stated in *Jackson*, "we have not identified any discrete legal criteria for distinguishing a sale of services from a sale of ... property." *Id.* However, "the transaction is determined by its character under the statute

---

**3.**  Both Flik and the State Tax Assessor filed motions for summary judgment and neither party claimed on appeal that there was a dispute of material fact.  Furthermore, the

Superior Court's decision and order entering summary judgment notes that Flik and the State Tax Assessor agreed that there was no genuine issue as to any material fact.

rather than the phrasing of the contract involved." *Community Telecasting Serv. v. Johnson,* 220 A.2d 500, 503 (Me.1966).

[¶ 15] In *Community Telecasting Service v. Johnson,* we held that a television station's preparation and sale of art work and slides for the purpose of advertising the business of its customers on the air was a taxable sale of tangible personal property rather than a nontaxable sale of services. 220 A.2d at 503. We noted that courts in other jurisdictions have held that a transaction is a sale of services rather than a sale of goods where the creation of the property to be transferred requires high skill, the materials involved are of relatively little value, the principal value of the product lies in the services to be rendered, and the product is of little value to anyone other than the buyer. *Cmty. Telecasting Serv. v. Johnson,* 220 A.2d 500, 503 (Me.1966).

[¶ 16] We reiterated these criteria for determining whether a sale is a sale of goods or services in *Measurex Systems v. State Tax Assessor,* 490 A.2d 1192, 1195–96 (Me.1985) (upholding the State Tax Assessor's decision that the sale of "canned" software to be used with computer systems that Measurex sold to its clients was a taxable sale of goods because the software was prepared for a variety of users and was suitable for its purpose without modification). However, in *Jackson Advertising Corporation v. State Tax Assessor,* we cautioned that we had not adopted the *Community Telecasting* factors as a comprehensive statement of the legal criteria for distinguishing between sales of services and personal property. *Jackson Adver. Corp.,* 551 A.2d at 1367.[4]

[¶ 17] Flik argues that the contract payments were made by MBNA pursuant to a service contract that governed the management and operation of the cafeteria. However, Flik concedes that the contract payments included a "guaranteed profit" and that Flik would not have charged such low prices for its food sales had MBNA not agreed to reimburse Flik for the costs it could not recover from the revenues derived from sales to cafeteria patrons. The contract payments reimburse Flik's costs to acquire, prepare, and serve the food and to maintain the cafeteria for the purpose of selling the food. Flik has failed to satisfy its burden of establishing that the contract payments are compensation for services that are not part of the retail sale of food.

[¶ 18] Flik also asserts that the contract payments are not consideration for the sale of food and, therefore, are not subject to sales tax because the contract payments do not correspond directly to the sales of particular meal items. Flik supports this proposition by citing to cases in other jurisdictions. *See, e.g., Szabo Food Serv., Inc. v. State Bd. of Equalization,* 46 Cal.App.3d 268, 119 Cal.Rptr. 911, 913 (1975) (holding that subsidies and guarantee payments paid to cafeteria manage-

4. It is important to note that in *Jackson,* we predicated our holding on a different standard of review than we apply in this case. We held in *Jackson* that 36 M.R.S.A. § 151 required the Superior Court to determine whether the State Tax Assessor's conclusion was rational and, therefore, that the Superior Court erred in reviewing the Tax Assessor's decision de novo. 551 A.2d at 1366–67. Since the *Jackson* case, the Legislature has amended the law regarding the Superior Court's standard of review of decisions of the Tax Assessor. *Serv. & Erection Co. v. State Tax Assessor,* 684 A.2d 1, 2 (Me.1996) (citing P.L.1991, ch. 873, § 3). The new statutory language indicates that the Superior Court should "make a de novo determination of the merits of the case" and that the court should "make its own determination as to all questions of fact or law." 36 M.R.S.A. § 151; *Serv. & Erection Co.,* 684 A.2d at 2.

ment companies are nontaxable transactions because there is no basis for relating any portion of those payments to any individual sale of food as part of the selling price); *accord Chet's Vending Serv. v. Dep't of Revenue,* 71 Ill.2d 38, 15 Ill.Dec. 860, 374 N.E.2d 468, 470 (1978); *Dining Mgmt. Servs., Inc. v. Comm'r of Revenue,* 404 Mass. 335, 534 N.E.2d 1178, 1180 (1989); *Omaha Pub. Power Dist. v. Nebraska State Tax Comm'r,* 210 Neb. 309, 314 N.W.2d 246, 249 (1982); *M & M/Mars, Inc. v. Commonwealth,* 162 Pa.Cmwlth. 375, 639 A.2d 848, 850–51 (1994).

[¶ 19]  We decline to follow the holdings of these other jurisdictions because Maine's sales tax statutes do not require that payments for the sale of tangible personal property relate directly to a particular item. *See* 36 M.R.S.A. §§ 1752(14), 1811 (1990 & Supp.2002).  Instead, Maine statutes require that the retailer pay tax on the "value of all tangible personal property and taxable services sold at retail in this State." 36 M.R.S.A. § 1811. The statute defines sale price as the "total amount of a retail sale," including services that are part of that sale. 36 M.R.S.A. § 1752(14); *Jackson Adver. Corp.,* 551 A.2d at 1367.  The statute, on its face, does not exempt payments that constitute the sale price of tangible personal property if they come from two different sources, if they are paid at two different times, or if they are not itemized to correspond to a particular item sold.

[¶ 20]  In the absence a statutory requirement that the payments directly relate to sales of particular property, we decline to interpret the sales tax statutes to impose such a requirement because to do so would lead to an illogical result.  If Flik charged the entire cost of a lunch meal to the cafeteria patron at the cash register, Flik would be required to remit sales tax on the entire price of that meal. Conversely, Flik concedes that if MBNA hired Flik to cater lunch on site and subsidized the entire price of the lunch, without charging the MBNA employees for the meal, Flik would be required to pay sales tax on the entire cost of that meal.  *See, e.g. Stouffer Mgmt. Food Serv. v. Tully,* 98 Misc.2d 1128, 415 N.Y.S.2d 559, 560 (N.Y.Sup.Ct.1978) (holding that food service corporation is liable for sales tax on reimbursements received from corporate clients pursuant to various contracts in which the employees either do not pay for the food or pay a small portion), *aff'd mem.,* 414 N.Y.S.2d 948 (N.Y.App.Div. 1979); *First Nat'l Bank v. Bullock,* 584 S.W.2d 548, 551–52 (Tex.Civ.App.1979) (holding that payments made by a corporation to a food service company to furnish, prepare and serve meals to the corporation's employees in the corporation's cafeteria at no cost to the employees were subject to sales tax).

[¶ 21]  When Flik charges the cafeteria patrons sixty percent of the price of the meal and MBNA subsidizes Flik at the end of each month to ensure that Flik recovers the remainder of the costs and a profit that Flik did not obtain from cafeteria patrons, it is illogical to conclude that sales tax should be paid only on the sixty percent of the cost of the meal that was charged at the cash register and that no sales tax should be paid on the remaining forty percent of the cost of the meal that is recovered through the contract payments. In all three scenarios, there are no material differences in the value of the goods sold or the services being provided by Flik. The only difference is the structure of the compensation for the transfer of food and the services that are integral to preparing and serving that food.  Thus, the contract pay-

ments that Flik received from MBNA fall within the definition of sale price under 36 M.R.S.A. § 1752(14) and are subject to sales tax.

The entry is:

Judgment vacated. Remanded for an entry of judgment in favor of the State Tax Assessor.