2006 ME 62

**R.F. FLIPPO et al.**

v.

**L.L. BEAN, INC., et al.**

Supreme Judicial Court of Maine.

Argued: April 10, 2006.
Decided: May 26, 2006.

Peter J. Rubin, Esq., Daniel J. Mitchell, Esq. (orally), Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for plaintiffs.

David W. Bertoni, Esq. (orally), Brann & Isaacson, Lewiston, for defendant.

G. Steven Rowe, Attorney General, Thomas A. Knowlton, Asst. Atty. Gen. (orally), Augusta, for intervenor State Tax Assessor.

Panel: CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] This case is on report from the Superior Court (Cumberland County, *Cole, J.*) pursuant to M.R.App. P. 24(c). The court granted partial summary judgment in favor of R.F. Flippo, the representative of a class of plaintiffs holding MBNA L.L. Bean Visa cards, and partial summary judgment in favor of L.L. Bean, Inc., on Flippo's class action complaint alleging that L.L. Bean wrongly charged Maine sales tax on the value of coupons issued to cardholders and used to purchase merchandise from L.L. Bean. We agree with

L.L. Bean and the State Tax Assessor that L.L. Bean properly charged the sales tax at issue. We therefore affirm the judgment in part and vacate in part.

## I. CASE HISTORY

[¶ 2] In 1996, L.L. Bean, Inc., and MBNA America Bank, N.A., entered into an agreement under which MBNA would issue a "co-branded" or "affinity" L.L. Bean Visa card. Holders of the card would receive benefits, including credits applicable toward future L.L. Bean purchases in amounts based on percentages of purchases made with the card. The credits would take the form of coupons (credit coupons) issued by MBNA. MBNA agreed to pay L.L. Bean certain royalties for each new card account and for some existing card accounts, plus a certain percentage of the value of different types of card transactions. In 1998, L.L. Bean and MBNA entered into an amended and restated agreement that continued the card program but changed the amount of credits issued to cardholders and royalties paid to L.L. Bean.

[¶ 3] In addition to accepting credit coupons, L.L. Bean offered and accepted coupons (inducement coupons) to encourage customers to apply for new card accounts. The agreements between L.L. Bean and MBNA contained provisions for additional royalties to be paid to L.L. Bean by MBNA for new accounts opened in response to such L.L. Bean marketing efforts. When redeeming either credit coupons or inducement coupons, L.L. Bean did not return them to MBNA, nor did L.L. Bean regularly report to MBNA the value of coupons that had been redeemed.

[¶ 4] In January 2000, Rona Flippo, a resident of Cambridge, Massachusetts, visited the L.L. Bean retail store in Freeport, where she applied for a card and received a $5 inducement coupon. She immediately used the coupon toward a purchase of merchandise. Over Flippo's protest, but consistent with its practice since the beginning of the coupon program, L.L. Bean charged Flippo Maine sales tax (then 5.5%) on the entire amount of the purchase, without first deducting the value of the coupon. Flippo thus paid twenty-eight cents in sales tax on the $5 coupon.

[¶ 5] In July 2000, L.L. Bean requested an advisory ruling from Maine Revenue Services on whether it should collect Maine sales tax on the full purchase price, without taking into account the amount of a credit coupon, or on the reduced price after deducting the amount of the credit coupon. Maine Revenue Services responded that, assuming the facts as stated by L.L. Bean, it should collect the tax on the full purchase price.

[¶ 6] Flippo filed a class action complaint, subsequently amended twice, in Superior Court in July 2000. The complaint alleged that L.L. Bean improperly collected sales tax on the value of coupons used to reduce the purchase price of goods. All versions of the complaint contained three counts, for overcharging of sales tax, breach of an implied contract, and violation of the Unfair Trade Practices Act, 5 M.R.S. §§ 205–A to 214 (2005). The court granted Flippo's motion for class certification and the State Tax Assessor's motion to intervene.

[¶ 7] In December 2002, the class moved for partial summary judgment on liability, and L.L. Bean moved for summary judgment. In July 2003, the court granted partial summary judgment in favor of the class on its implied contract claim for the years 1996, 1997, 1998, and 2000, and partial summary judgment in favor of L.L. Bean for all other years. In January 2004, the court denied L.L. Bean and the Assessor's motion for reconsideration. In Sep-

tember 2005, after a joint motion by the parties, the court reported the case to us.

## II. LEGAL ANALYSIS

[¶ 8] Maine imposes sales tax "on the value of all tangible personal property ... sold at retail" within the State, and "[v]alue is measured by the sale price ...." 36 M.R.S. § 1811 (2005). "'Sale price' means the total amount of a retail sale valued in money, whether received in money or otherwise." 36 M.R.S. § 1752(14) (2005). Sale price includes "[a]ll receipts, cash, credits and property of any kind or nature and any amount for which credit is allowed by the seller to the purchaser," but does not include "[d]iscounts allowed and taken on sales." *Id.* § 1752(14)(A)(2), (B)(1).

[¶ 9] Maine Revenue Services has provided some guidance as to the meaning of "sale price" in the context of coupons.[1] Maine Revenue Services Sales and Use Tax Instructional Bulletin No. 25 (Sept. 1, 1997) distinguishes between "manufacturer's coupons" and "retailer's coupons." For a manufacturer's coupon, the taxable sale price is the total selling price before deducting the coupon because the retailer, being reimbursed by the manufacturer for the face value of the coupon, "does not recognize any loss in the profit made on the sale." For a retailer's coupon, the tax is computed after deducting the value of the coupon because the retailer does not recover the value of the coupon from any party, but discounts the price and thus reduces its profit.

[¶ 10] The class's position boils down to a contention that because the coupons honored by L.L. Bean (credit coupons and inducement coupons) are not in a strict sense manufacturer's coupons, they must be retailer's coupons. That contention mischaracterizes the issue. Section 1752(14) does not make the value of a narrow class of manufacturer's coupons part of the sale price, while excluding the value of all other coupons. Rather, it sweeps broadly so that any value received for a retail sale is included in the sale price, with some specific exclusions, including "[d]iscounts allowed and taken on sales." 36 M.R.S. § 1752(14)(B)(1). The precise question here, therefore, is whether, when L.L. Bean accepts a credit coupon or inducement coupon as partial payment for merchandise, it is allowing a discount on the sale within the meaning of the statute. The distinction between manufacturer's coupons and retailer's coupons may be helpful in understanding what the Legislature meant by discount, but it is not controlling.

[¶ 11] Maine Revenue Services' Instructional Bulletin No. 25 suggests that the distinctive feature of a retailer's coupon, which makes it a discount on a sale within the meaning of the statute, is that the retailer reduces its profit on the sale because it will not recover the value of the coupon from any source. The distinctive feature of a manufacturer's coupon is that the retailer does not recognize a loss in its profit on the sale because the retailer expects to be reimbursed by the manufacturer for the face value of the coupon. Nothing in the statute or Maine Revenue Services' bulletins suggests that the redemption of coupons must be considered a discount unless the retailer will receive reimbursement tied directly to the face value of each particular coupon. Rather, if the retailer expects reimbursement, and thus does not foresee a reduction in profits, there is no discount regardless of the

---

1. Neither L.L. Bean nor the Assessor argues on report that we should defer to Maine Revenue Services' interpretation of the sales tax statute. *Cf. Green v. State Tax Assessor,* 562 A.2d 1217, 1218–20 (Me.1989) (deferring to Assessor's construction of income tax statute).

particular form that the reimbursement will take.

[¶ 12] The one Maine case on point supports this interpretation. In *Flik International Corp. v. State Tax Assessor*, 2002 ME 176, ¶¶ 2–5, 812 A.2d 974, 976, Flik sold food at cafeterias in MBNA facilities, and was paid a monthly "contract payment" by MBNA in addition to the amounts paid by purchasers of the food. We rejected Flik's argument that "the contract payments are not consideration for the sale of food and, therefore, are not subject to sales tax because the contract payments do not correspond directly to the sales of particular meal items." *Id.* ¶ 18, 812 A.2d at 978. We held that:

> Maine's sales tax statutes do not require that payments for the sale of tangible personal property relate directly to a particular item. Instead, Maine statutes require that the retailer pay tax on the "value of all tangible personal property ... sold at retail in this State." The statute defines sale price as the "total amount of a retail sale," .... The statute, on its face, does not exempt payments that constitute the sale price of tangible personal property if they come from two different sources, if they are paid at two different times, or if they are not itemized to correspond to a particular item sold.

*Id.* ¶ 19, 812 A.2d at 979 (citations omitted). We concluded: "In the absence [of] a statutory requirement that the payments directly relate to sales of particular property, we decline to interpret the sales tax statutes to impose such a requirement ...." *Id.* ¶ 20, 812 A.2d at 979.

[¶ 13] The class argues that *Flik* is distinguishable because MBNA's royalty payments to L.L. Bean have no relationship, direct or indirect, to L.L. Bean's acceptance of credit coupons and inducement coupons as payment for merchandise. The MBNA contract payments at issue in *Flik* were more closely tied to sales than the MBNA royalty payments here because the contract payments were calculated by a formula that considered Flik's monthly cafeteria sales, *see id.* ¶ 5 & nn. 1, 2, 812 A.2d at 976, while the royalty formula does not consider the amount of coupons redeemed in any particular period. Our holding in *Flik*, however, depended less on its particular facts than on the broad principle that, absent an explicit statutory exclusion, any payment that serves as consideration for the sale of goods is part of the sale price. Whether particular payments are in fact consideration for the sale of goods—in particular, whether a payment to a retailer who honors a coupon is reimbursement for the value of that coupon—necessarily depends on the intention of the parties.

[¶ 14] L.L. Bean alleged in its statements of material fact that it and MBNA always intended that the royalties paid by MBNA would serve as reimbursement for L.L. Bean's expenses in providing benefits to cardholders, including accepting the coupons as payment for merchandise. L.L. Bean also alleged that it would not have agreed to accept the coupons absent MBNA's agreement to fully compensate it for the value thereof. In support of those allegations, L.L. Bean cited affidavits from employees of L.L. Bean and MBNA, plus a request for proposals that L.L. Bean sent to credit card companies in 1995. The proffered evidence amply supports L.L. Bean's allegations, and the class identified no evidence to the contrary.[2] L.L. Bean's

2. Contrary to the class's contention, L.L. Bean's evidence was not barred by the parol evidence rule, because it was not offered to alter or vary the terms of the contract, *see Rogers v. Jackson*, 2002 ME 140, ¶ 9, 804 A.2d 379, 381, and because that rule cannot pre-

uncontroverted evidence thus demonstrates that the value of the coupons is not an unreimbursed discount, but is part of the sale price.

[¶ 15] The trial court, although accepting L.L. Bean's argument that its contract with MBNA provided for reimbursement, thought it necessary to examine whether L.L. Bean had in fact been fully reimbursed in each year from 1996 to 2001 (the last year for which data was available when the summary judgment motions were filed). The court then accepted the class's assertion that L.L. Bean had not been fully reimbursed in four of the six years and that L.L. Bean over-charged the sales tax in those years.

 [¶ 16] The court's approach was incorrect because there is no requirement in the statutes for examining actual reimbursement. Sales tax is "due and payable at the time of the sale," 36 M.R.S. § 1952 (2005), even if some or all of the consideration is not paid at that time. If the consideration is never paid, the sales tax law gives only a very limited remedy. If the sale was made on credit and the retailer later charges off the account as worthless, it can claim a credit for the tax paid on the sale against its future sales tax liability. 36 M.R.S. § 1811-A (2005). But if the retailer expected third-party reimbursement at the time of the sale, and never receives it—for example, because it loses the manufacturer's coupon, or submits it too late, or the manufacturer goes bankrupt—it has no remedy. Because the tax is due, and must be calculated at the time of sale, the expectation of the retailer that there will be third-party reimbursement for part of the sale price must also be judged at the time of the sale. The failure to receive expected reimbursement

within a certain period does not retroactively decrease the sales tax liability and entitle the purchaser to a refund of the difference.

[¶ 17] We therefore need not decide whether L.L. Bean in fact received complete reimbursement from MBNA in every year of the card program. The value of coupons honored by L.L. Bean was part of the sale price, not a discount, because it was always the intention of L.L. Bean and MBNA that MBNA's royalty payments would reimburse L.L. Bean for the value of the coupons. L.L. Bean properly charged sales tax on the value of the coupons, and was entitled to summary judgment for all years on all of the class's claims.

The entry is:

Partial summary judgment in favor of L.L. Bean affirmed. In all other respects, judgment vacated. Remanded to the Superior Court for entry of judgment in favor of L.L. Bean on all counts for all remaining years.

---

vent a court from inquiring into the facts in order to determine the actual sale price for tax purposes, *see Director of Revenue v. Loeth-* *en Amusement, Inc.,* 753 S.W.2d 334, 336 (Mo.Ct.App.1988).