611 A.2d 815

LANCASTER LABORATORIES, INC., Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1992.

Decided June 11, 1992.

466

Russell J. Ober, Jr., for petitioner.

Bart J. DeLuca, Jr., Sr. Deputy Atty. Gen., for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

CRAIG, President Judge.

Lancaster Laboratories, Inc. and the Commonwealth have filed exceptions to this court's panel decision in *Lancaster Laboratories, Inc. v. Commonwealth,* 134 Pa.Commonwealth Ct. 59, 578 A.2d 988 (1990) (*Lancaster I* ), which addressed Lancaster's contested use tax deficiency, assessed by the Board of Finance and Revenue on Lancaster's purchase of equipment, computers and related supplies. The nature of Lancaster's business is to provide scientific analysis, research and testing of client-provided products by separating the samples into components, measuring or analyzing the components, then providing the client with a written report of the results.

This court held (1) that Lancaster does not qualify for a manufacturing exclusion because its activities do not result in the formation of a different type of personal property; (2) that the percentage of Lancaster's use of its equipment for testing and inspection of property still within the client's production cycle is exempt from the imposition of use taxes; and (3) that the equipment used for labeling purposes is subject to the imposition of the use tax. The court then (1) affirmed both the abatement of penalties (not an issue in the present case) and the tax liability assessed for the use of equipment and supplies employed by Lancaster for labeling purposes; (2) reversed the tax liability assessed upon Lancaster for equipment and supplies used in testing and inspection activities of goods in production; and (3) remanded the case to the board

for a determination of the percentage of Lancaster's use of its equipment for the exempt testing and inspection activities. The court also vacated the assessed computed interest, and remanded the case to the board for a recomputation of assessable interest.

Lancaster now asserts that this court erred in denying the manufacturing exclusion because § 201(c) of the Tax Reform Code of 1971[1] does not require the formation of a different type of personal property; that requirement is specified in 61 Pa.Code § 32.1, which, Lancaster contends, is invalid. Alternatively, Lancaster argues that its production of a written report for the client satisfies the tangible product requirement of the manufacturing exclusion. Additionally, Lancaster contends that this court erroneously affirmed the imposition of use tax on the labeling-related equipment because that equipment is predominantly used for testing and inspection, which is exempt from taxation under 61 Pa.Code § 32.32(a)(2)(iii).

The Commonwealth takes exception to the court's ruling that the percentage that Lancaster uses the purchased equipment for testing and inspection is exempt from the imposition of use tax (1) because Lancaster did not provide evidence that the testing occurred on a product still within the production cycle, and (2) because Lancaster did not provide testimony on the tax exempt status of its customers. Consistent with its exceptions, the Commonwealth notes that the Code does not permit apportionment of use taxability of manufacturing-related property so as to make the use of a given item of equipment partly exempt and partly taxable.

### 1. *Manufacturing*

 Lancaster first contends that this court erroneously denied the manufacturing exclusion because § 201(c) of the Code only requires the transformation of personal property to a "form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer." Lancaster argues that the regulatory definition of manufacturing at 61 Pa.Code § 32.1, which provides that the transformed

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7201(c).

property "shall result in a different product having a distinctive name, character and use," defeats the legislative intent found in the statutory definition by adding the requirement of the production of tangible property. Alternatively, Lancaster asserts that the written report produced for the client, which reflects Lancaster's analyses of the samples, constitutes the product which satisfies the tangible property requirement.

■ Subsection (1) of § 201(c), upon which this court relied, states that the manufacturing process begins "with the first production stage and ends with the completion of personal property having the physical qualities (including packaging, if any, passing to the ultimate consumer) which it has when transferred by the manufacturer to another." Therefore, although the regulatory requirement of a "different product" is not expressly stated in the statute, manufacturing under § 201(c)(1) must include transformed property for sale or use by the manufacturer that is passed ultimately to the consumer or another manufacturer, which is necessarily a different product with a distinctive name, character and use. Because the components resulting from Lancaster's breakdown of client-provided samples are not sold to or used by Lancaster or its clients, consumers or another manufacturer, Lancaster's activities do not fall within the manufacturing exclusion of § 201(c) of the Code.

■ Lancaster argues alternatively that the production of a written report for the client does satisfy the requirement of transformed property for use by another manufacturer, analogous to the manufacturing process of transforming a photographic negative into a finished portrait. *Commonwealth v. Olan Mills, Inc. of Ohio*, 456 Pa. 78, 317 A.2d 592 (1974). A photographic portrait involves the transformation of unexposed film ultimately into a paper product containing the enlarged and enhanced images of the subject preserved on the film after exposure. However, Lancaster's written analysis of client-produced property is merely a description of the process and results obtained; Lancaster's product (the written report) is *not* a successor product of the analyzed product derived from a "transformation" of the latter.

## 2. Testing and Inspection (Quality Control)

The second exception before us is the Commonwealth's assertion that this court erroneously apportioned the taxability of Lancaster's equipment used in testing and inspection of the client's samples before the product is released as completed. The court held that the "percentage of Lancaster's use of its equipment for the purpose of testing and inspection of property still within the production cycle is exempt from the imposition of use tax." *Lancaster I,* 134 Pa.Commonwealth Ct. at 69, 578 A.2d at 993. The Commonwealth also contends that Lancaster did not present evidence that the testing occurred on products during the production cycle.

Title 61 Pa.Code § 32.32(a)(2)(iii) provides that purchased property predominantly used "to test and inspect the product throughout the production cycle, shall be considered to be directly used in manufacturing-processing operations," and shall be exempt from taxation.

As this court noted in *Lancaster I,* Senior Vice President and Director of the Health Sciences Division of Lancaster Laboratories, Dr. Fred R. Albright, gave "uncontradicted testimony and [a] corresponding exhibit [to] indicate that Lancaster's predominant use of the equipment involves testing samples for tax-exempt manufacturing entities." *Id.,* 134 Pa.Commonwealth at 68, 578 A.2d at 992. The court, which conducted its own evidentiary hearing on November 28, 1989, found Dr. Albright's testimony to be credible. Furthermore, the court concluded that "the record supports the fact that the majority of Lancaster's testing and inspection of its clients' samples occurs before the client releases the product as completed...." *Id.,* 134 Pa.Commonwealth at 69, 578 A.2d at 993.

Therefore, the testimony, which the Commonwealth did not contradict, and this court's previous scrutiny of the record indicate that Lancaster does conduct testing for tax-exempt clients on products that are still within the production cycle.

However, the Commonwealth also raises the issue that the court's *Lancaster I* decision to apportion taxability of the equipment is in violation of the Code. Essentially, the Com-

monwealth argues that the predominant use of the equipment is either more than 50% devoted to testing and inspection, thereby exempting the entire purchased product from taxation, or less than 50% devoted to testing and inspection, thus precluding any tax exemption.

Because 61 Pa.Code § 32.32(a)(2)(iii) specifies "predominant use," rather than a percentage of use, we must agree with the Commonwealth's assertion that an exemption on testing and inspection equipment is an all-or-nothing proposition. However, we must still remand this aspect of the case to the board to identify which equipment is, in fact, predominantly used for testing and inspection.

### 3. Research (Nutritional Labeling)

█ The final exception is Lancaster's assertion that the court erred in denying the manufacturing exclusion to equipment used for product labeling. Section 201(c)(5) of the Code states that manufacturing includes

> [r]esearch having as its objective the production of a new or an improved (i) product or utility service, or (ii) method of producing a product or utility service, but in either case not including market research or research having as its objective the improvement of administrative efficiency.

Lancaster argues (1) that labeling is part of the research that is performed on a product before it is packaged in its final form, and (2) that the research equipment is predominantly used for testing and inspection, thus already qualifying for exemption status.

As this court previously cited, 61 Pa.Code § 41.9(e) provides:

> The [research] exemption does not apply to the purchase or use of property or services to be used indirectly in research operations nor is the exemption applicable to the purchase or use of property or services to be used in managerial activities, sales activities, or other nonoperational activities of a research establishment or project.

Because Dr. Albright's testimony indicates that Lancaster's label-related testing is for a "competitive edge," which constitutes sales activity, the purchased labeling equipment does not qualify for the manufacturing exclusion.

However, if the same equipment is being used for labeling as is used for testing and inspection, and the board concludes on remand that the predominant use of that equipment is for testing and inspection, then the equipment will be exempt from taxation under 61 Pa.Code § 32.32(a)(2)(iii).

Accordingly, Lancaster's exceptions as to the manufacturing exclusion and as to the labeling-related equipment are denied. The Commonwealth's exception as to the testing and inspection exemption is granted to the extent that our direction as to apportionment is vacated, and this case is remanded to the board to identify which property is predominantly used for testing and inspection purposes. Finally, the board is directed to recompute the tax deficiency amount and assess interest accordingly.

FRIEDMAN, J., dissents.

### ORDER

NOW, June 11, 1992, exceptions filed to this court's order dated July 16, 1990, are acted upon as follows:

1. Petitioner's exceptions as to the manufacturing exclusion and as to petitioner's claim for exemption based on labeling are denied.

2. Respondent's exception to the testing and inspection exemption is granted to the extent that our direction as to apportionment is vacated, and this case is remanded to the Board of Finance and Revenue to identify which property is predominantly used for testing and inspection purposes.

3. The Board of Finance and Revenue is directed to recompute the tax deficiency amount and assess interest accordingly.

Jurisdiction relinquished.