## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victory Bank, : 
           Petitioner : 
            :   236 F.R. 2014
         v. : 
            :   Submitted:  April 10, 2019
Commonwealth of Pennsylvania, : 
           Respondent : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge[1]
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE McCULLOUGH                        FILED:  October 16, 2019


         Pursuant to Pennsylvania Rule of Appellate Procedure 1571(i),[2] Victory Bank files exceptions to this Court's three-judge panel opinion and order in *Victory Bank v. Commonwealth of Pennsylvania*, 190 A.3d 782 (Pa. Cmwlth. 2018) (*Victory Bank I*), dated July 17, 2018, which affirmed an order of the Board of Finance and Revenue (Board), dated April 28, 2014.  There, we concluded that the Board properly denied Victory Bank's petition for refund because it was required to pay sales tax on

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.

[2] Pennsylvania Rule of Appellate Procedure 1571(i) provides, in pertinent part, as follows: "**(i) Exceptions.**  Any party may file exceptions to an initial determination by the court under this rule within 30 days after the entry of the order to which exception is taken."  Pa.R.A.P. 1571.

its purchase of computer hardware, canned computer software, and services related thereto, under Section 202(a) of the Tax Reform Code of 1971 (Tax Code).[3] Upon review, we overrule Victory Bank's exceptions.

## Background

As set forth in our initial decision, Victory Bank, a commercial bank, filed a petition for refund of sales tax paid on purchases of computer hardware, canned computer software, and services. Victory Bank purchased the disputed items from three sellers and used all of the computer software and hardware "for its protection or convenience in conducting financial transactions." *Victory Bank I*, 190 A.3d at 783. For the contested transactions, Victory Bank paid state sales tax in the amount of 6% of the purchase price for each item purchased. Victory Bank did not tender an exemption certificate to any of the sellers.

Victory Bank initially filed a petition with the Department of Revenue's (Department) Board of Appeals (BOA) seeking a refund of sales tax in the amount of $50,000, plus applicable interest, paid during the period from November 26, 2009, until November 26, 2012. It later amended the requested amount to $17,801.61. The BOA denied Victory Bank's request and the Board affirmed. In its petition for review to this Court, Victory Bank sought a refund for sales tax paid across 84 petitioned-transactions in the aggregate amount of $14,775.35, plus interest. *Id.*

On appeal to this Court in *Victory Bank I*, Victory Bank only raised the following issue: whether a bank's purchases of computer software components, as well as services related thereto, were excluded from sales tax pursuant to the Department's Financial Institution Security Equipment Regulation (FISE regulation),[4] because the

---

[3] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7202(a).

[4] 61 Pa. Code §46.9. The regulation provides, in relevant part, as follows:

(a) *General.* This ruling pertains to the sale, installation and repair of security equipment utilized by financial institutions. . . .

(b) *Definitions.* The following words and terms, when used in this section, have the following meanings, unless the context clearly indicates otherwise:

> *Financial institution*--A corporation or association, such as a bank, a bank and trust company, a trust company, a savings bank, a mutual banking association, a savings and loan association, a finance company, a credit union, or other similar institution, which maintains a place of business in this Commonwealth.

> *Installation*--An attachment or affixation of security equipment to real estate by means of one of the following:

>> . . . .

>> (iii) Wire which is integrated into an electrical system.

> *Security equipment*--Systems, devices and equipment, and their components, utilized by a financial institution for its protection or convenience in conducting financial transactions.

(c) *Sales and installation.* Sales and installation shall conform with the following:

> (1) A sale of security equipment which is also installed, as defined in subsection (b), by the seller or or [sic] the seller's designee is a construction contract. The seller-installer may not charge sales tax of the Commonwealth to his customer upon the contract price. Rather, the seller-installer, as a construction contractor, is considered to be the consumer of property transferred in connection with the construction contract. He shall pay the applicable sales or use tax upon his purchase price of the installed equipment, or upon his purchase price of material acquired and incorporated into the installed equipment . . . .

> . . . .

 (d) *Straight sale.* A straight sale is one in which security equipment of a type which does not require installation, as defined in subsection (b)

sellers or their designees installed the computer hardware and the bank used the computer and software for its protection or convenience in conducting financial transactions. *Id.*

We concluded that it was undisputed that Victory Bank met the definition of a "financial institution" and that its computer system met the definition of "security equipment" under the FISE regulation. Conversely, we determined that it was disputed whether plugging a computer system into an electrical outlet amounted to "installation" under the regulation, and whether the FISE regulation had been superseded by statute. We declined to address the first of these arguments because we concluded that statutory changes had superseded the definition of "construction contract" in the regulation. *Id.* at 784.

We noted that when the Department first promulgated the FISE regulation there was no statutory definition of the term "construction contract," so that if equipment was installed within the definitions under the regulation it amounted to a "construction contract" and the obligation to pay sales tax fell on the contractor/installer rather than the purchasing institution. However, we observed that when the Tax Code was amended by the General Assembly in 2002,[5] the definition of "construction contract" in section 201 of the Tax Code was changed to the following: "A written or oral contract or agreement for the construction, reconstruction, remodeling, renovation or **repair of real estate or a real estate structure.**" 72 P.S. §7201 (emphasis added). We concluded that the statutory definition of "construction

_____

is transferred, or one in which any type of security equipment is sold directly to a customer without installation by the seller or a designee. A straight sale is a taxable transfer of tangible personal property, and the seller shall register with the Department, to collect tax upon the total purchase price paid by a customer for security equipment, and to remit the tax collected to the Department.

*Id.*

[5] Act of June 29, 2002, P.L. 559.

4

contract" clearly "depart[ed] from the one found in the FISE regulation." *Victory Bank I*, 190 A.3d at 785.

Also, we observed that "a statute is law and trumps an administrative agency's regulations" and that when "there is a conflict between a statute and regulation which purports to implement the statute's provisions the regulation must give way." *Id.* (citing *Commonwealth v. Kerstetter*, 62 A.3d 1065, 1069 (Pa. Cmwlth. 2013), *aff'd*, 94 A.3d 991 (Pa. 2014); *Success Against All Odds v. Department of Public Welfare*, 700 A.2d 1340, 1351 n.6 (Pa. Cmwlth. 1997)). This Court determined that section (c)(1) of the FISE regulation presented "such a conflict in that the statutory definition for 'construction contract' [was] inconsistent with the regulation's definition," and, that it was irrelevant that the FISE regulation had not been amended or repealed because the Commonwealth was merely interpreting a self-executing act of the General Assembly, which allowed it to dispense with the typical regulation publication requirements under section 204 of the Commonwealth Documents Law[6] (CDL). *Victory Bank I*, 190 A.3d at 785. Accordingly, the Court held that Victory Bank could not rely upon section (c)(1) of the FISE regulation to argue that the seller of the computer system, instead of Victory Bank, owed the sales tax. *Id.*

In the absence of an applicable statutory exclusion or exemption, the sales at issue, by default, warranted a 6% sales tax under section 202(a) of the Tax Code. Section 202(a) of the Tax Code imposes a 6% tax on the "sale at retail" of "tangible personal property or services." 72 P.S. §7202(a). Concluding that the items at issue were such property, we held Victory Bank's purchases were "sales at retail" to which sales tax must be applied and that the vendor of the items was required to collect sales tax from the purchaser, *i.e.*, Victory Bank. *Victory Bank I*, 190 A.3d at 785. Therefore,

---

[6] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §1204.

since Victory Bank was required to pay sales tax on its computer systems under the Tax Code, the Board was found to have properly denied the petition for refund. *Id.* at 786. Victory Bank has now filed exceptions to our decision.[7]

## Discussion

In its exceptions, Victory Bank argues that (1) the Commonwealth failed to comply with the CDL and, thus, is precluded from seeking the invalidation of the FISE regulation through a judicial decision; (2) pursuant to the FISE regulation, the sellers, rather than Victory Bank, were responsible for paying sales tax on the purchased items; and (3) Victory Bank met the elements of the FISE regulation and, therefore, is entitled to a sales tax refund.

We first address whether the Commonwealth failed to comply with the CDL. Victory Bank maintains that the FISE regulation is presumptively valid and that, under the CDL, this Court is not the proper venue for the Commonwealth to amend or void the FISE regulation. Victory Bank contends that our panel decision overlooked our *en banc* decision in *Muscarella v. Commonwealth*, 87 A.3d 966 (Pa. Cmwlth. 2014), as applied to the CDL. As argued by Victory Bank, in *Muscarella* the Commonwealth maintained that certain tax regulations were invalid because they were inconsistent with the relevant statutory language; however, we held that because the regulations had been approved by the Office of Attorney General, under the CDL this Court was not the proper avenue to void or amend regulations. Victory Bank asserts that pursuant to the requirements of the CDL, the FISE regulation was published in the Pennsylvania Code and, thus, the Office of Attorney General presumptively approved

---

[7] In tax appeals from the Board of Finance and Revenue, this Court functions as a trial court, and exceptions filed to its final order have the effect of an order granting reconsideration. *American Electric Power Service Corp. v. Commonwealth*, 184 A.3d 1031, 1034 n.7 (Pa. Cmwlth.), *aff'd,* 199 A.3d 880 (Pa. 2018).

6

its legality. Victory Bank alleges that under the CDL, the Commonwealth is precluded from seeking a judicial decision invalidating the FISE regulation and, accordingly, our panel decision erred in concluding that the definition of "construction contract" in the regulation is now superseded by statute.

Conversely, the Commonwealth agrees with our decision in *Victory Bank I* that the amended statutory definition of "construction contract" in the Tax Code superseded the inconsistent definition in the FISE regulation. The Commonwealth contends that the CDL does not preclude the Commonwealth from seeking application of a recently enacted and implemented **statutory definition** in defense of a request for a tax refund. The Commonwealth maintains that while the CDL contains specific, mandatory procedures with regard to the legality, amendment, or repeal of administrative **regulations**, the CDL is only applicable to agency actions that actually constitute a regulation. Thus, the Commonwealth alleges that agency actions that do not constitute regulations, such as statements of policy and administrative adjudications of certain cases, are not subject to the constraints of the CDL. The Commonwealth contends that only agency actions that establish a binding norm constitute a regulation and that, here, its filing of a brief in opposition to Victory Bank's petition for review does not establish such a binding norm.

The Commonwealth also argues that Victory Bank misconstrues *Muscarella.* According to the Commonwealth, *Muscarella* does not preclude the Commonwealth from seeking application of a statutory provision over an inconsistent regulation's provisions or compel this Court to apply an inconsistent regulation in derogation of the relevant statutory provision. The Commonwealth asserts that it was not the "Commonwealth's brief in opposition to [Victory Bank's] request for refund, or action (or inaction) of the [Department], that determined the taxability of its purchases," but instead, the General Assembly's "adoption of a statutory definition for

7

'construction contract' inconsistent with the Department's earlier interpretations." (Commonwealth Br. at 18.)

Initially, we note that in *Muscarella*, the estate of a claimant who paid her property taxes for a tax claim year challenged the constitutionality of a tax regulation that permitted a claimant's estate to seek a tax rebate as long as the claimant survived the entire claim year, but did not permit a rebate where the claimant did not survive the entire claim year. 87 A.3d at 969-71. In that case, the relevant regulation had essentially remained unchanged for four decades. *Id.* Although, pursuant to the regulation, the Commonwealth's long standing practice had been to provide property tax rebates to estates when the claimant survived the entire calendar year, the Commonwealth argued before this Court that **all estates** were prohibited from receiving rebates. *Id.* at 974. The Commonwealth maintained that this Court should "disregard the regulations permitting rebates to estates, in essence abandoning its prior position that the regulations [were] reasonable and in furtherance of the intent of" the relevant statute. *Id.* We noted that even though the underlying statutory framework had been amended numerous times since the regulation was first adopted by the General Assembly in the 1970s, the General Assembly "never amended it to deny estates the right to file for rebate." *Id.* at 976.

After invalidating the regulation on constitutional grounds, this Court also concluded that "to the extent the Commonwealth [sought] to void the Department's current regulations, such action [was] precluded" by the CDL. *Id.* at 977. We observed that "[t]he CDL sets forth specific, mandatory procedures with regard to the legality, amendment, or repeal of administrative regulations." *Id.* We also noted that section 205 of the CDL specifically "provides that '[a]ll administrative regulations and changes shall be approved as to legality by the Department of Justice' and that '[t]he decision of the Department of Justice shall be final and shall not be subject to judicial review at the instance of the agency.'" *Id.* (quoting section 205 of the CDL, 45 P.S. §1205).

8

Additionally, we found that "section 201 of the CDL requires an agency to provide 'public notice of its intention to . . . amend or repeal any administrative regulation' and section 202 requires an agency to 'review and consider any written comments' before 'taking action upon any administrative regulation or change therein.'" *Muscarella*, 87 A.3d at 977 (quoting sections 201-202 of the CDL, 45 P.S. §§1201-1202).

This Court determined that the Commonwealth had approved the relevant regulation because the Pennsylvania Bulletin, in which the regulation was first published, stated the regulations were to be forwarded to the Department of Justice to be approved for legality, and the regulations were then set forth in the Pennsylvania Code, which created a rebuttable presumption that the regulations were approved. *Muscarella*, 87 A.3d at 978. However, we noted that the Commonwealth sought to "void the current regulations by circumventing the very same public notice and comment requirements of the CDL which the Commonwealth complied with in enacting them." *Id.* Therefore, we held that this Court was "not the proper venue" for the relief sought by the Commonwealth, *i.e.*, "attempting to amend or void the current regulations." *Id.*

Based on our review of the relevant administrative procedure, this case is readily distinguishable from *Muscarella*. Unlike in *Muscarella* where the relevant regulation was unaffected by subsequent statutory amendments, here, changes to the Tax Code rendered the FISE regulation inconsistent with the underlying statute.

It is axiomatic that all regulations "must be consistent with the statute under which they were promulgated." *Slippery Rock Area School District v. Unemployment Compensation Board of Review*, 983 A.2d 1231, 1241 (Pa. 2009). "A statute is the law and trumps an administrative agency's regulations." *Kerstetter*, 62 A.3d at 1069. Similarly, "[w]here there is a conflict between the statute and a regulation purporting to implement the provisions of that statute, the regulation must

9

give way." *Commonwealth v. Colonial Nissan, Inc.*, 691 A.2d 1005, 1009 (Pa. Cmwlth. 1997).

"[W]hen an agency adopts a regulation pursuant to its legislative rule-making power, as opposed to its interpretive rule-making power,[8] it is valid and binding upon courts as a statute so long as it is (a) adopted within the agency's granted power, (b) issued pursuant to proper procedure, and (c) reasonable." *Tire Jockey Service, Inc. v. Department of Environmental Protection*, 915 A.2d 1165, 1186 (Pa. 2007). When analyzing whether a regulation is adopted within an agency's granted power, a court should consider, *inter alia*, whether the regulation is "consistent with the enabling statute" because "clearly, the [General Assembly] would not authorize agencies to adopt regulations inconsistent with the enabling statutes." *Marcellus Shale Coalition v. Department of Environmental Protection*, ___A.3d___ (Pa. Cmwlth., No. 573 M.D. 2016, filed July 22, 2019), slip op. at 8 (internal quotation marks omitted). Thus, when "a regulation presents 'an actual conflict with the statute,' we cannot reasonably understand the regulation to be within the agency's ambit of authority, and the statute must prevail." *Id.* (quoting *AMP Inc. v. Commonwealth*, 814 A.2d 782, 786 (Pa. Cmwlth. 2002), *aff'd*, 852 A.2d 1161 (Pa. 2004)).

With respect to the second prong of *Tire Jockey*, a reviewing court should assess "whether the agency promulgating the regulation followed the proper procedures. Generally, in promulgating regulations an agency must comply with any special procedures set forth in its enabling legislation as well as the procedures set forth in the [CDL]." *Marcellus Shale*, ___ A.3d at___, slip op. at 8. However, as our Supreme Court explained in *Borough of Pottstown v. Pennsylvania Municipal Retirement Board*,

---

[8] Our Supreme Court has differentiated a legislative regulation from an interpretive regulation, stating that "a legislative regulation is substantive and creates a new controlling standard of conduct while the interpretive regulation does not." *Slippery Rock*, 983 A.2d at 1238. Interpretive rules "merely construe, without expanding, the terms of a statute." *Marcellus Shale Coalition v. Department of Environmental Protection*, ___ A.3d___, ___ n.7 (Pa. Cmwlth., No. 573 M.D. 2016, filed July 22, 2019), slip op. at 7 n.7.

10

712 A.2d 741 (Pa. 1998), so-called interpretive rules or regulations, which "do not in themselves establish binding standards of conduct . . . need not be promulgated in accordance with the [CDL] to the extent they merely construe a statute and do not improperly expand upon its terms." *Id.* at 743. In order "[t]o be viable, an interpretive rule must genuinely track the meaning of the underlying statute, rather than establish an extrinsic substantive standard." *Id.*; *see also Success Against All Odds*, 700 A.2d at 1351 (holding that it is a well-established precept that an agency "may render interpretive law so long as the interpretation is one that a reviewing court determines is consistent with the meaning of the statute with respect to which it is rendered and that interpretive rules consistent with these principles are not subject to the publication requirements" of the CDL); *Jay R. Reynolds, Inc. v. Department of Labor & Industry, Prevailing Wage Appeals Board*, 661 A.2d 494, 496-97 (Pa. Cmwlth. 1995) (same).

Here, first and foremost, as the panel already determined, the amendment of the Tax Code resulted in the language of the FISE regulation being inconsistent with the statutory language. Under the FISE regulation, a "construction contract" includes the installation of security equipment by a financial institution. 61 Pa. Code §46.9. As found by the panel, when the FISE regulation was first promulgated, there was no definition of construction contract. However, once the Tax Code was amended in 2002, "construction contract" was defined in section 201 of the Tax Code as "[a] written or oral contract or agreement for the construction, reconstruction, remodeling, renovation or **repair of real estate or a real estate structure.**" 72 P.S. §7201. We reaffirm *Victory I* on this issue that the statutory definition of "construction contract" clearly "departs from the one found in the FISE regulation." *Victory Bank I*, 190 A.3d at 785.

Under Victory Bank's reasoning, this Court would be required to follow a regulation superseded by a subsequent amendment to the enabling statute, unless the agency that adopted the regulation followed the requirements of the CDL to repeal the regulation. However, Victory Bank's logic reaches an absurd result. Because "[a]

statute is the law and trumps an administrative agency's regulations," *Kerstetter*, 62 A.3d at 1069, where, as occurred here, the General Assembly amends a statute that is inconsistent with a promulgated regulation, the regulation must yield to the statute. *Colonial Nissan, Inc.*, 691 A.2d at 1009. Therefore, regardless of whether the promulgation of a regulation follows the proper procedures, a regulation must be consistent with the enabling statute. *See Slippery Rock*, 983 A.2d at 1241; *Marcellus Shale*, ___ A.3d at ___ , slip op. at 8.

The amendment of section 201 of the Tax Code resulted in the FISE regulation being in conflict with the underlying statute; under our law the statute takes precedence over the regulation without regard to whether the Department followed the procedure mandated by the CDL. Unlike *Muscarella*, where there was **no change** in the enabling statute but the Department suddenly decided not to follow its longstanding regulation without seeking to repeal or amend the regulation pursuant to the dictates of the CDL, here there **was an intervening change** to the statute. Accordingly, because *Muscarella* did not involve an amendment to the underlying statute, that case differs from the instant case. Because the 2002 statutory amendment to section 201 of the Tax Code contains a definition of "construction contract" that is inconsistent with the FISE regulation, the panel did not err in concluding that the FISE regulation did not apply to Victory Bank's purchases of the disputed items and, thus, that it was required to pay sales tax on the same.

Second, to the extent the Commonwealth's position in this case constitutes an actual "regulation," it is interpretive rather than substantive. Since the Commonwealth is merely construing section 201 of the Tax Code, its interpretation is consistent with the statutory language, and it is not expanding on the statutory language, the Commonwealth is rendering an interpretive rule that is not subject to the

requirements of the CDL.[9] *See, e.g.*, *Borough of Pottstown*, 712 A.2d at 743; *Success Against All Odds*, 700 A.2d at 1351. Therefore, this case is unlike *Muscarella* in an additional respect: whereas in *Muscarella* the Department impliedly sought to adopt a substantive regulation by no longer following its longstanding regulation, here, the Commonwealth is only interpreting an amended statutory provision. Accordingly, *Muscarella* has negligible relevance to the disposition of this case.

The remaining exceptions, noted herein, largely present the same issues and arguments that were addressed by this Court in *Victory Bank I*. After careful review of the record and briefs, we conclude that none of the arguments presented by Victory Bank warrant sustaining its exceptions and vacating this Court's prior decision.

## Conclusion

After reviewing our previous opinion, we concur with both the result and reasoning of this Court's opinion in *Victory Bank I*, dated July 17, 2018. None of the authority cited by Victory Bank changes our conclusion or the rationale of that opinion. Accordingly, we overrule Victory Bank's exceptions.

_____
PATRICIA A. McCULLOUGH, Judge

---

[9] Further, as we determined in *Victory Bank I*, under section 204 of the CDL, regulations relating to the interpretation of "self-executing acts" of the General Assembly, such as section 201 of the Tax Code, are not subject to the publication requirements of the CDL. *Victory Bank I*, 190 A.3d at 785 (citing section 204 of the CDL, 45 P.S. §1204); *see also*, *Success Against All Odds*, 700 A.2d at 1350-51 (noting that section 204 of the CDL "allows an administrative agency to 'omit or modify' the publication requirements [of the CDL] where the regulation relates to the interpretation of a self-executing act of assembly"). "Self-executing statutes are those which are mandatory in nature and require no further legislative action in order to become effective." *Success Against All Odds*, 700 A.2d at 1351.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victory Bank,                                    :
                            Petitioner          :
                                                :
            v.                                   :    236 F.R. 2014
                                                :
Commonwealth of Pennsylvania,                    :
                            Respondent          :

## ***ORDER***

AND NOW, this 16th day of October, 2019, the exceptions filed by Victory Bank to this Court's July 17, 2018 opinion and order in *Victory Bank v. Commonwealth of Pennsylvania*, 190 A.3d 782 (Pa. Cmwlth. 2018), are overruled. Judgment shall be entered in favor of the Commonwealth.

_____
PATRICIA A. McCULLOUGH, Judge